Spencer, J. (dissenting.)
We are applied to for a writ of re-restitution, to put the applicant in possession of a house, Sec. whereof Samuel Briggs was dispossessed on the 5th of February last.
It appears that a certiorari has been issued to jEJ. Williams, a justice of the peace oí Westchester county, and that he died in April last, without having made any return. It appears also, that the justice delivered to Mr. Munro a paper to aid him in drawing up a return, which was intended for, and purports to be, a conviction of Briggs of a forcible detainer, but it sets no fine upon him, nor does it show that the justice ordered the possession of the house, See. to be delivered up; but from a memorandum made by Mr. Munro, on the paper, in the handwriting of the justice, and from his admissions to him, it appears, that on Briggs’s refusal to deliver up possession, he was ordered into custody ; and Mr. Munro states that the justice informed him, that when the goods of Briggs had been removed from the premises,1 the justice then ordered him to be enlarged.
In the case of The People v. Shaw, (1 Caines’ Rep. 129.) this court recognised the decision in The People v. Beebee and others, that if the indictment be bad, re-restitution must follow oí course; and in the case of The People v. King, (2 Caines’ Rep. 99.) the same principle was adopted. In the case of The People v. Shaw, the Chief Justice observed, that “ from the general discretionary power this court has in these cases, they may set a restitution *314 aside and award a re-restitution, whenever it shall appear that restitution hath been illegally awarded, either for insufficiency, or defect in the indictment, or other cause.” Now, from the paper ¿¡ejrverecL by the justice to Mr. Munro, or from any instructions given by the justice to him to prepare the return, we cannot presume that the justice ordered restitution; and admitting that the’ conviction, if it be considered such, be quashed, a re-restitution would not be the consequence; the paper purports merely the conviction of Briggs of a forcible detainer; it neither sets a fine nor awards restitution. The complainant, then, has not been devested of his possession by any judicial proceeding of the magistrate. Hawkins (b. 1. c. 64. s. 65.) lays down the law with accuracy, and the cases he refers to bear him out, that “ neither can a defendant, in any case whatsoever, ex rigore juris, demand a restitution, either upon quashing the indictment, or a verdict for him on a traverse thereof, See. for a power of granting a restitution is vested in the K. B. only by an equitable construction of the general words of the statutes, and is not expressly given by those statutes, and is never made use of by that court, but when, upon consideration of the whole circumstances of the case, the defendant shall appear to have some right to the tenements, the possession whereof he lost by the restitution granted to the prosecutor.”
The complainant, Shotwell, obtained possession of the house, &c. occupied by George Depeyster, in • October last, according to Depeyster’s affidavit, by force, and according to his own, by fraud, provided Depeyster was Isaac Clason’s tenant. Shot-well’s right to claim the premises was derived from a sale of them under a judgment against B. F. Haskin. Haskin swears that he never had the fee of the farm in him, and that he had but a short and temporary interest therein, and that Clason, on the 6th of February last, and for several months previous, as he believed, had a good title to the same, Clason swears that he claims the fee of the farm, having purchased and paid therefor a full consideration; that G. Depeyster and C. Stacy were his tenants under written leases, and had been several months in quiet possession thereof, until about the 1 fth of October last, when G. Shotwell entered thereon, without his knowledge or consent; that Stacy, the co-occupant, remained in possession, as his tenant. Caleb Stacy swears he has occupied the farm, house and premises under Isaac Clason for better than 13 months past, accord *315 itig to written agreements; that he went on in March, 1812, and has ever since resided in a house on the said farm, within a few yards of the house in which Briggs resided, both of which houses are in the same yard; and that he used, in common with Depeyster, before his expulsion, the same garden, pump, barn, cattle, and farming utensils, and that he took care of the stock of the premises, and that the principal work and labour xvas under his directions. Lavinia Stacy and Silvanas Stacy confirm all the facts stated by Caleb Stacy.
With respect to the conduct of Justice Williams, on the 5th of February, there is great discordance in the affidavits for and against the motion. I think the weight of evidence is, that the justice illegally and unwarrantably lent his aid in inducing Briggs to surrender up the possession. But I am of opinion, that in the exercise of a sound and just discretion, we ought not to grant a re-restitution. The complainant himself, having originally become possessed by force or collusion with Depeysler, Clason’s tenant, comes with an ill grace to ask a restoration; it is impossible. to say, were we inclined to interfere, how far, and to what he ought to be restored. I think, that inasmuch as the justice never judicially awarded a writ of possession, nor pretended expressly to restore Depeysler to his possession, that we have no right to grant a restitution; and if we had, this case is presented with such accompanying circumstances, as not to call forth the exercise of ■the discretionary poxver with which we are armed.
Proceedings quashed an.d a xvrit of re-restitution awarded;